IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
GREENVILLE DIVISION

GIANNI WILLIAMS                                                                                    PLAINTIFF

V.                                                        CIVIL ACTION NO. 4:19-cv-89-NBB-JMV

CITY OF GREENWOOD, MISSISSIPPI,
POLICE CHIEF RAY MOORE, in his
individual and official capacities,
OFFICER JERRY WILLIAMS, in his
individual and official capacities, and
OFFICER KEVIN S. HAYES, in his
individual and official capacities                                                              DEFENDANTS

**MEMORANDUM OPINION**

This cause comes before the court upon the defendants' motion for summary judgment. Upon due consideration of the motion, response, exhibits, and applicable authority, the court is ready to rule.

Factual Background and Procedural Posture

This Section 1983 wrongful arrest and excessive force case arises from an incident occurring shortly after midnight on January 31, 2019, in Greenwood, Mississippi. Defendant Officer Jerry Williams, a licensed police officer for the City of Greenwood, was on patrol when he observed a white Chevrolet Tahoe turn right on East McLaurin Street without use of a turn signal. Williams began following the Tahoe to execute a traffic stop and observed the Tahoe make a second right turn onto Avenue K, again without use of a turn signal. Williams continued to pursue the vehicle.

Williams followed the Tahoe down Avenue K until it reached a section of the avenue in front of a duplex located at 507 Avenue K. The Tahoe came to a stop in the middle of the street, obstructing traffic. Williams stopped behind the Tahoe and activated his patrol car's blue lights.

The plaintiff, Gianni Williams, quickly exited the Tahoe, locked it, and headed for the door of the duplex where the mother of his child, Tandriyah Harris, was standing in the doorway. Officer Williams radioed dispatch the Tahoe's license number and advised that the plaintiff had exited the Tahoe. Officer Williams then exited his patrol car and commanded the plaintiff to lay on the ground. The plaintiff admits he refused to comply with this command and instead became angry, began yelling and cursing, and demanded that Williams tell him what he had done wrong.

Williams believed he saw the plaintiff reach into his sweatpants to retrieve something; thus, Williams drew his taser but did not deploy it. The plaintiff then complied with Williams' command and laid on the ground on his stomach. He continued to exhibit an aggressive demeanor and angrily demanded to know what he had done to be pulled over. Williams answered that he failed to use his turn signal twice. The plaintiff yelled "My blinker? My blinker? You got a gun on me on a blinker?" to which Williams responded, "It's a taser." As the plaintiff continued to argue with Williams, Williams holstered his taser and moved toward the plaintiff to secure him in handcuffs.

Defendant Sergeant Kevin Hayes then walked up to Williams and the plaintiff as Williams struggled to secure the plaintiff in handcuffs. Other officers also arrived on the scene. The plaintiff admits to resisting the officers' efforts to handcuff him because he did not believe he was given a sufficient explanation as to what he had done wrong. A brief struggle ensued, but the officers were eventually able to secure the plaintiff in handcuffs, though he continued to be verbally aggressive and physically resist.

Williams and Hayes then attempted to stand the plaintiff up on his feet to walk him to Williams' nearby patrol car. The plaintiff, still angry and asserting he had done nothing wrong, physically resisted the officers' efforts to stand him up. Once the officers successfully stood the

2

plaintiff up and instructed him to walk to the patrol car, the plaintiff continued resisting, refused to walk to the patrol car, angrily repeated his claim that he had done nothing wrong, and again demanded to know what he had done.  The plaintiff then dropped himself to the ground and would not allow the officers to take him.  The officers warned the plaintiff that, if he did not stand back up and walk to the patrol car, he would be tasered.  Williams pulled his taser out, switched it to drive-stun mode (which does not deploy prongs), and tasered the plaintiff with a two-second drive stun.  After being tasered, the plaintiff finally allowed the officers to stand him up and walk him to the patrol car.  The plaintiff remained irate and verbally aggressive and refused to get into the back of the patrol car.  Further argument ensued, but the plaintiff ultimately acquiesced and finally got into the back of the patrol car.

      Once the plaintiff was secured and in the patrol car, Williams examined the parked and locked Tahoe and smelled marijuana.  He then observed through the windows a green leafy substance that appeared to be marijuana on the center console and in the cup holder of the Tahoe.  Williams reported this to the other officers on the scene.

      Because the Tahoe was parked and locked in the middle of Avenue K, obstructing a public street, the officers called to have it towed.  The City, through Sergeant Serafin Simon, Jr., obtained a search warrant to search the Tahoe that same day.  The green leafy substance was sent to the Mississippi State Crime Lab for testing and was confirmed to be marijuana.

      The plaintiff was taken to the Leflore County Jail where he requested medical assistance.  He admits he was provided medical assistance, having his wrists and back examined.  The plaintiff bonded out the next day and went home.  The plaintiff sought no additional medical treatment related to this incident until two months later on March 1, 2019, when he saw a chiropractor at his attorney's instruction.

The plaintiff was charged with several crimes resulting from this incident. He was charged with failure to signal, no driver's license, resisting arrest, disorderly conduct (failure to comply), no proof of motor vehicle liability insurance, and possession of marijuana. After a trial on October 28, 2020, the plaintiff was convicted of failure to signal, no driver's license, disorderly conduct (failure to comply), no proof of insurance, and possession of marijuana.

The plaintiff brought this action on June 6, 2019, but subsequently amended his complaint on November 8, 2019. The amended complaint advances numerous claims: excessive force, violation of due process, unlawful arrest, and cruel and unusual punishment in violation of the Fourth, Fifth, Eighth, and Fourteenth Amendments (Count I); negligent training, supervision, and retention (Count II); supervisory liability (Count III); failure to intervene (Count IV); negligence (Count V); and assault, battery, and intentional infliction of emotional distress (Count VI). The defendants have now moved for summary judgment as to each claim.

## Standard of Review

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). On a motion for summary judgment, the movant has the initial burden of showing the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). If the movant makes such a showing, the burden then shifts to the non-movant to "go beyond the pleadings and . . . designate specific facts showing that there is a genuine issue for trial." *Id.* at 324. The non-movant "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

4

When deciding a motion for summary judgment, the court must view the underlying facts in the "light most favorable to the party opposing the motion." *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962). As such, all reasonable inferences must be drawn in favor of the non-movant. *Id.* Before finding that no genuine issue for trial exists, the court must first be satisfied that no rational trier of fact could find for the non-movant. *Matsushita*, 475 U.S. at 587 (1986). "Summary judgment, although a useful device, must be employed cautiously because it is a final adjudication on the merits." *Jackson v. Cain*, 864 F.2d 1235, 1241 (5th Cir. 1989).

Analysis

The amended complaint includes claims under both federal and state law against the City of Greenwood and Williams, Hayes, and Police Chief Ray Moore in their individual and official capacities. The standards governing the plaintiff's section 1983 claims are well settled. Claims against municipalities require a plaintiff to show both (1) that a violation of the Constitution occurred and (2) that a governmental policy or custom was the moving force behind the violation. *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001). Defendant sued in their individual capacities enjoy qualified immunity unless the plaintiff can show both (1) that a violation of the Constitution occurred and (2) that the individual-capacity defendant's actions were objectively unreasonable under clearly established law. *McClendon v. City of Columbia*, 305 F.3d 314, 322-23 (5th Cir. 2002) (en banc). The fact that the plaintiff cannot show a constitutional violation under the undisputed facts of this case is dispositive of his federal claims.

First, any claim that the plaintiff's arrest was unlawful under the Fourth Amendment fails because the plaintiff was convicted of a number of crimes resulting from the incident. His claim for false or unlawful arrest is therefore a non-starter. Pursuant to *Heck v. Humphrey*, 512 U.S. 477, 486-87 (1994), Section 1983 may not be used to undermine a prior criminal conviction.

5

The plaintiff's convictions in this case conclusively establish the existence of probable cause, which in turn defeats any constitutional claim based on an alleged false detention. The plaintiff's claim for unlawful arrest must fail.

Second, the plaintiff's claim of excessive force under the Fourth Amendment fails because Officer Williams' deployment of the taser was not objectively unreasonable in light of the plaintiff's undisputed resistance and admitted refusal to comply during the incident and arrest. *See, e.g., Hogan v. Cunningham*, 722 F.3d 725, 734 (5th Cir. 2013) (explaining that courts must consider whether the arrestee actively resisted or attempted to evade the arrest). In the recent case of *Cloud v. Stone*, 993 F.3d 379, 384-87 (5th Cir. 2021), the Fifth Circuit held that an officer did not use excessive force when tasing a suspect who displayed a confrontational manner and turned to face the officer while one hand was handcuffed. The court also explained that a subsequent drive stun from the taser was not excessive because the suspect continued his refusal to comply with the officer's commands. *Id.* at 386-87. In the present case, Williams tased the plaintiff only once with a two-second drive stun. "[W]here a suspect resists arrest or fails to follow police orders, officers do not violate his right against excessive force by deploying their taser to subdue him." *Buchanan v. Gulfport Police Dep't*, 530 F. App'x 307, 314 (5th Cir. 2013). For these reasons, the plaintiff's excessive force claim must be dismissed.

Third, as to any claim arising from the Fifth Amendment, the Fifth Circuit has held that "[t]he Fifth Amendment applies only to violations of constitutional rights by the United States or a federal actor." *Jones v. City of Jackson*, 203 F.3d 875, 880 (5th Cir. 2000). Here, Officer Williams, Sergeant Hayes, and Chief Moore are municipal officials from the City of Greenwood, and they were not acting on behalf of the federal government. Consequently, the plaintiff's Fifth Amendment claim, to the extent it is directed at these individual capacity defendants, must fail as

a matter of law. *See, e.g., Bolling v. Hood*, No. 1:10cv189-LGR-HW, 2010 WL 5060471, at *5 (S.D. Miss. Dec. 6, 2010) (citing *Jones*, 203 F.3d at 880).

Fourth, the plaintiff has no claim against the defendants for violation of the Eighth Amendment because the Eighth Amendment only provides protection to convicted prisoners. *See, e.g., Morin v. Caire*, 77 F.3d 116, 120 (5th Cir. 1996) (observing that the "protections of the Eighth Amendment against cruel and unusual punishment are limited in scope to convicted prisoners and do not apply to [arrestees or] pretrial detainees").

Fifth, the plaintiff's due process claim fails. The plaintiff advances a claim for "violation of due process," alleging that Williams and Hayes "violated his due process rights" during the course of his arrest. It is well settled, however, that such claims by arrestees are analyzed under the Fourth Amendment. *See Saenz v. City of El Paso*, No. EP14-CV-244, 2015 U.S. Dist. LEXIS 102186, at *6 (W.D. Tex. Jan. 28, 2015) ("While the Fourth Amendment protects arrestees, once an arrest is complete, pretrial detainees are protected by the due process clause of the Fifth or Fourteenth Amendments.") (citing *Gutierrez v. City of San Antonio*, 139 F.3d 441, 452 (5th Cir. 1998)); *Graham v. Connor*, 490 U.S. 386, 395(1989) ("[A]ll claims that law enforcement officers have used excessive force – deadly or not – in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard, rather than under a 'substantive due process' approach."). As addressed above, the plaintiff's Fourth Amendment claims fail as a matter of law.

Sixth, the plaintiff's claim for "failure to intervene" fails. Because the plaintiff cannot establish a constitutional violation based on the officers' conduct, this claim is a non-starter. "The Fifth Circuit has held where no constitutional violation … is shown, there is no bystander

7

liability for failing to intervene." *Mack v. Smith*, No. 5:15cv202, 2017 WL 8217697, at *4 (E.D. Tex. Dec. 29, 2017) (citing *Davis v. Cannon*, 91 F. App'x 327 (5th Cir. 2004)).

Seventh, the plaintiff has established no claim for supervisory liability. It is well settled that Section 1983 does not authorize vicarious or respondeat superior liability of supervisors. *See Rios v. City of Del Rio, Texas*, 444 F.3d 417, 425 (5th Cir. 2006); *see also Cox v. Irby*, 281 F. App'x 390, 391 (5th Cir. 2008). Section 1983 creates liability only for a defendant's personal acts or decision, or if there is a sufficient causal connection between the supervisor's conduct and the constitutional violation. *See Rios*, 444 F.3d at 425. Here, there is no evidence that the officers' conduct denied the plaintiff his constitutional rights; thus, there can be no supervisory liability.

Finally, as for the plaintiff's claims of municipal liability, it is well established that, "[w]ithout an underlying constitutional violation, an essential element of municipal liability is missing." *Doe ex rel. Magee v. Covington County School Dist. ex rel. Keys*, 675 F.3d 849, 867 (5th Cir. 2012). Because the plaintiff cannot demonstrate a constitutional violation against the individual defendants, there necessarily can be no municipal liability. *Id.* Accordingly, the plaintiff's claims against the City of Greenwood and his claims against the officers in their official capacities[1] fail and must be dismissed.

The court, having found that the plaintiff's federal claims must be dismissed, declines to exercise its ancillary jurisdiction over the plaintiff's state law claims, and those claims will be dismissed without prejudice.

---

[1] "[A] suit against a municipal officer in his official capacity is treated as a suit against the municipality." *Adams v. May*, 903 F. Supp. 2d 433, 440 n.63 (S.D. Miss. 2012) (citing *Monell v. Dep't of Soc. Servs. of New York*, 436 U.S. 658, 690 n.55 (1978)).

8

Conclusion

For the foregoing reasons, the court finds that the defendants' motion for summary judgment is well taken and should be granted. The plaintiff's federal claims will be dismissed with prejudice, and his state law claims will be dismissed without prejudice. A separate order in accordance with this opinion will issue this day.

This 31st day of March, 2022.

/s/ Neal Biggers
NEAL B. BIGGERS, JR.
UNITED STATES DISTRICT JUDGE